

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHRYN M. RACICIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 3297 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kathryn M. Racicik, seeks judicial review of a final decision denying her application for disability insurance benefits under Sections 416(i) and 423 of the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423. On February 23, 2005, Ms. Racicik filed her application claiming an onset date of March 19, 2003 (R. 19). On October 10, 2006, an administrative hearing was held before the Administrative Law Judge ("ALJ"), at which Ms. Racicik, her mother, and a vocational expert ("VE") all testified (R. 219). Ms. Racicik's claim was denied by the ALJ in a written decision dated October 25, 2006 (R. 19). Ms. Racicik then brought a request for review before the Social Security Administration Appeals Council on December 3, 2006 (R. 9). On April 16, 2007, the Appeals Council denied Ms. Racicik's request for review (R. 4), making the ALJ's decision the final decision of the Commissioner.

Ms. Racicik now seeks summary judgment reversing the Commissioner's decision or, in the alternative, remanding the case for further proceedings (doc. # 13). The Commissioner has filed a cross-motion for summary judgment to affirm the decision below (doc. # 15). The motions have

now been fully briefed.[1] For the reasons set forth below, the Court denies the Commissioner's motion for summary judgment and grants Ms. Racicik's motion for summary judgment, remanding the case for further proceedings on one limited issue.[2]

## I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision. The Court will discuss Ms. Racicik's personal and medical history, and then we will summarize the ALJ's written decision.

### A.

Ms. Racicik was born on March 29, 1957, making her 47 years old when she applied for disability benefits. Ms. Racicik is single and lives with her mother (R. 221). Ms. Racicik is five feet, two-and-a-half inches tall, and weighs 278 pounds, making her obese (R. 141, 145, 196). Ms. Racicik was diagnosed with epilepsy in 1975 (R. 21, 222). She has been treated since then with drugs that generally control her seizures (R. 21). However, one side effect of the drugs is that they make Ms. Racicik tired (R. 231). Ms. Racicik testified that she has never had a driver's license, due to her seizure disorder (R. 221-22), and that she continues to experience approximately six seizures every month (R. 21). Ms. Racicik has not changed her medication or medication levels for her seizures in the past ten years (R. 223). Additionally, Ms. Racicik has never gone to the hospital for a seizure or injured herself while in a seizure (R. 224). Ms. Racicik's last employer never found out about Ms. Racicik's seizure condition, even though Ms. Racicik was employed there for almost five

---

[1] The Court set a briefing schedule that invited plaintiff to file a reply memorandum by November 13, 2007 (doc. ## 9,11). Plaintiff failed to file a reply or seek additional time to do so; accordingly, on December 28, 2007, the Court entered an order closing the briefing (doc. # 17).

[2] Pursuant to the consent of the parties (doc. # 10) and 28 U.S.C. § 636(c), on September 7, 2007, the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 12).

years (R. 232). According to Ms. Racicik, her typical seizure lasts a few minutes, after which she becomes very lethargic (R. 232). Ms. Racicik's mother confirmed that Ms. Racicik becomes very tired after a seizure, but stated that she believed her daughter's seizures last less than a minute (R. 235).

Ms. Racicik has a history of medical complaints related to varicose veins in her legs. Ms. Racicik testified that she needs to keep her legs elevated as much as possible (R. 230-231). In February 2003, she went to a doctor (Dr. Bente) because of redness and swelling in her right leg, which was determined to be cellulitis and was treated with antibiotics (R. 179). Within a week, the condition had improved (R. 179). In April 2004, she visited her treating physician (Dr. Carl Novotny) complaining about varicose veins, for which the physician referred her to a vein clinic (R. 138). Ms. Racicik never went to the vein clinic (R. 224-225). Ms. Racicik again visited Dr. Bente with complaints about her legs on March 7, 2006 (R. 179). The doctor noted that there was no cellulitis or drainage at that time (R. 179). In May and July 2006, Ms. Racicik again saw Dr. Bente for similar leg problems; the doctor noted there were no ulcerations, and only minimal drainage (R. 182).

Ms. Racicik was twice evaluated by doctors from the Bureau of Disability Determination Services in March and April of 2005 (R. 140, 144). On March 15, 2005, Dr. Dean Velis found that Ms. Racicik could walk normally without assistance, had normal strength and hand functionality, had edema, related either to venous insufficiency or cardiac problems, on her legs, and was alert, oriented, had an intact memory, and could concentrate and pay attention adequately (R. 140-142). On April 2005, Dr. Mahesh Shah reached the same conclusions with regard to Ms. Racicik's strength, ability to walk, use of her hands, and memory, concentration, and alertness (R. 144-147).

Dr. Shah additionally concluded that Ms. Racicik had varicose veins with leakage, although he was unable to reach any conclusions with regard to whether there was stasis dermatitis because Ms. Racicik refused to remove bandages that she had wrapped around her legs, allegedly due to leakage (R. 147).

Ms. Racicik also suffers from additional medical conditions. She has hypertensive cardiovascular disease (hypertension) (R. 156). She has methicillin resistant staphylococcus aureus (MSRA) (R. 208). Ms. Racicik testified that a side effect of her medications is that she falls asleep two or three times a day, for a period of 10 to 30 minutes on each occasion (R. 231). She testified that she was terminated from the last employment she held, in 2003, because she fell asleep on the job (R. 232-33).

Ms. Racicik also was seen by Dr. Novotny on April 5, 2005, for complaints of back pain (R. 156-57). Ms. Racicik complained that the pain started in the area Dr. Novotny described as the right posterior hemithorax, and radiated into the right anterior hemithorax (R. 156). Ms. Racicik described the pain as a "5" on a scale of 1 to10 (R. 156). Dr. Novotny diagnosed Ms. Racicik with dorsal myofascitis in the T7 through T10 area, and prescribed medication (R. 156-57). When Ms. Racicik reported on April 9 that the medication did not relieve the pain, Dr. Novotny asked her to undergo outpatient x-rays to further assess the condition (R. 157). As of July 13, 2005, Ms. Racicik had not undergone the studies or contacted Dr. Novotny further (157). At the hearing, Ms. Racicik explained that she did not get x-rays because her back stopped bothering her, and is not currently a problem for her (R. 223).

Ms. Racicik has testified that she takes care of household chores, although someone else mows the lawn and shovels the walk (R. 225). She can climb stairs with a handrail (R. 228). Ms.

4

Racicik takes care of her mother (R. 225-226). She can lift 25 to 30 pounds (R. 227-228). She does not experience difficulties or pain while sitting, but has problems standing in one place too long (R. 227). After standing for roughly an hour and a half, Ms. Racicik needs to sit (R. 224).

Ms. Racicik has previously held jobs as a transportation analyst, a sales clerk, and as a scanner, indexer, and documentation representative (R. 240-242). Ms. Racicik last engaged in substantial gainful activity in 2003, when she earned $6,212.02 (R. 68). A VA testified that, of these jobs, only the sales clerk position was semi-skilled and required light exertion (R. 240). The VA stated that these other positions were semi-skilled, but only required sedentary exertion (R. 240-242). The VA also noted that if one accepted as true the frequency and effect of her seizures, Ms. Racicik would be unable to work (R. 243). The VE further testified that if Ms. Racicik fell asleep two to three times daily, for 10 to 30 minutes each time, as a result of side effects from her medications, that would be enough to preclude employment (R. 244).

## B.

In his written opinion, the ALJ found at Step 2 that Ms. Racicik suffers from the following severe impairments: seizure disorder, hypertension and obesity (R. 21). He further found at Step 3 that these impairments did not meet or equal one of the listed impairments (R. 21-22). The ALJ then found that Ms. Racicik had a Residual Functional Capacity ("RFC") that allowed her to lift and carry 10 pounds at a time, to sit for extended periods of time, and to walk and stand occasionally (R. 22). The ALJ found that Ms. Racicik could stand for up to 1-1/2 hours (R. 22).[3]

---

[3] The opinion states that Ms. Racicik can stand "12-1/2 hours" (R. 22), which is plainly a typographical error, since in support of that finding, the ALJ cited Ms. Racicik's questionnaire response in which she said she could be on her feet 1-1/2 hours before needing to sit (R. 98, 100).

5

The ALJ considered whether Ms. Racicik's impairments required other limitations (R. 22). He noted that Ms. Racicik said she could lift 25 to 30 pounds and did not have back or leg pain (R. 22). He also explained that Ms. Racicik's seizure disorder did not require more limitations, as the frequency and duration of her seizures had not changed for 10 years and her last employer did not even know of her seizure disorder until after her termination when she applied for unemployment compensation (R. 22). However, the ALJ noted that Ms. Racicik's impairments rendered her more limited than described in the state agency physician report, which said that Ms. Racicik could do light duty work, and thus did not give that report controlling weight (R. 22).

Based on this RFC, the ALJ found that Ms. Racicik could perform her past relevant work as a scanner/indexer and documentation representative, since those jobs were sedentary and did not require any lifting of weight (R. 23). The ALJ thus found at Step 4 that Ms. Racicik was not disabled; accordingly, he did not proceed to the Step 5 analysis.

## II.

To establish disability as defined by the Social Security Act, a claimant must show "[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Social Security regulations dictate a sequential five-part test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). Under the regulations, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4)

if not, whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). Before moving to Step 4, the ALJ will determine the claimant's RFC, which is the individual's ability to do sustained mental and physical work despite their impairments. 20 C.F.R. §§ 404.1520(a)(4)(iv); 1545(a)(1). If either Step 3 or Step 5 is answered in the affirmative, then the claimant has established that he or she is disabled and can collect disability insurance. *Young*, 957 F.2d at 389. If any step other than Step 3 is answered in the negative, however, then the claimant has not established a disability. The burden of proof is on the claimant to prove Steps 1 through 4, but the burden shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's decision, this Court may not make any new determinations of fact, reweigh evidence, or substitute its judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). This Court must instead accept findings of fact that are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where the evidence conflicts in such a way that reasonable minds may differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not this Court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). The Court's role is limited to determining whether the Commissioner's final decision is "supported by substantial evidence and based on proper legal criteria." *Erhart v. Secretary of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). The Commissioner's finding can satisfy the substantial evidence requirement even

if a reviewing court might have reached a different conclusion. *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986).

This does not mean, however, that the Commissioner is entitled to unlimited judicial deference. Rather, the ALJ "has a basic obligation to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). The ALJ must consider all relevant evidence, and cannot discuss only that evidence that favors her ultimate conclusion. *Herron*, 19 F.3d at 333. The ALJ is not required to evaluate, in writing, every piece of evidence in the record, but the ALJ's analysis must be articulated at some minimal level and must state "reasons for accepting or rejecting entire lines of evidence." *Id.* The decision must create a "logical bridge from the evidence to [the] conclusion," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), such that a reviewing court may have a "glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

Ms. Racicik claims that reversal with an award of benefits is required because the Commissioner, by adopting the ALJ's conclusions, made several errors in finding her not disabled under the Act. She asserts that these errors led the ALJ to improper conclusions regarding Step 3, 4, and 5 of the analysis outlined above. Specifically, Ms. Racicik contends that (1) the ALJ made factual errors; (2) the ALJ improperly made his own medical findings; (3) the ALJ failed to consider Ms. Racicik's credibility properly; and (4) the ALJ failed to consider the entire record. The Court considers each of the specific contentions below.

### A.

Ms. Racicik contends that factual errors were made that indicate the ALJ's decision was not based on substantial evidence from the record. However, the plaintiff only points out one error: the

ALJ's opinion says that Ms. Racicik is capable of standing for "12-1/2 hours" (R. 22), but the record actually indicates that she can stand only 1 to 1-1/2 hours (R. 98, 100). This Court concludes that the reference to 12-1/2 hours was a mere slip of the pen, and constitutes nothing more than a harmless typographical error (*see* note 4, *supra*). We note that the ALJ assessed the plaintiff as having a RFC finding for sedentary work (R. 22), which confirms that the ALJ did indeed credit Ms. Racicik's statement that she could only stand for 1 to 1-1/2 (not 12-1/2) hours (R. 100).

## B.

Ms. Racicik claims that the ALJ impermissibly assumed the role of a doctor by rejecting the RFC findings of the state agency examiner and making his own (Pl.'s Mem. at 8). The Seventh Circuit has held that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, the Seventh Circuit has also noted that "a claimant is not entitled to disability benefits simply because her physician states that she is disabled or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (internal quotations omitted). In making a determination of a claimant's RFC, the ALJ has a responsibility to consider the record as a whole, including the claimant's personal statements about their limitations, not just the opinions of medical doctors. 20 C.F.R. § 404.1545(a)(3); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "[W]hen evidence in opposition . . . is introduced[,] . . . the rule drops out and the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." *Hofsllen v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

In determining Ms. Racicik's capacity, the ALJ did not completely reject the RFC findings of the state physicians. Rather, the ALJ did not give those findings controlling weight where he was persuaded by ceratin contrary statements made by Ms. Racicik (R. 22). On that basis, the ALJ found Ms. Racicik to be more limited than the state physicians had concluded (R. 22). The state physicians had determined that Ms. Racicik was capable of performing a limited range of light work (R. 165), but the ALJ concluded that she was limited to only performing sedentary work (R. 22-23). Thus, Ms. Racicik is in the unusual position of arguing for remand because the ALJ rejected the state physicians' less-favorable RFC findings, and relied on her testimony to find a greater degree of limitation. We conclude that this argument fails to establish a basis for reversal or remand.[4]

## C.

Ms. Racicik asserts that the ALJ erred at Step 3 of the analysis, by finding that she failed to meet or equal the regulatory listings for disability due to epilepsy and due to chronic venous insufficiency (Pl.'s Mem. at 9-13). The Commissioner correctly points out that Ms. Racicik bore the burden of providing medical and other evidence of her disability. 20 C.F.R. §§ 404.1512 (a), (c). However, Ms. Racicik contends that the ALJ's finding that she had failed to meet this burden was the result of his failure to credit Ms. Racicik's evidence with regard to (1) the frequency and intensity of her seizures and (2) leg ulcerations. We address each of these points in turn.

## 1.

The regulatory listing for a disability due to petit mal epilepsy requires that a plaintiff provide documentation

---

[4] Ms. Racicik also offers (but fails to develop) the argument that the ALJ should have called a medical expert at the hearing, (Pl.'s Mem. at 8). That argument, even if not waived, is without merit.

> by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404 App. 1 (11.03). Ms. Racicik contends that the testimony that she has an average of five to six seizures each month, and a calendar she created showing the dates on which she had seizures, satisfies this regulatory standard. However, the regulations are clear that it is the responsibility of the plaintiff to "provide *medical evidence* showing that . . . [she has] an impairment(s) and how severe it is." 20 C.F.R. § 404.1512(c) (emphasis added). The medical evidence in the record does not corroborate Ms. Racicik's statements regarding the intensity and frequency of her seizures.

Ms. Racicik's treating physician indicated that her seizures were treated and controlled with medication, requiring infrequent office visits (R. 138). Ms. Racicik testified that she has her seizure medication prescriptions filled by her treating physician, and that she has not visited a neurological specialist in about 10 years (R. 227). Thus, the treating physician would seem to be the medical expert most familiar with Ms. Racicik's neurological condition. Furthermore, the treating physician's opinion that Ms. Racicik's seizures were generally treated and controlled was the only substantive medical evidence submitted by Ms. Racicik with regard to her seizures; she did not submit any medical evidence to confirm her statements about seizure frequency or intensity.

We recognize a plaintiff's allegations of symptoms should not be rejected solely because of a lack of objective medical evidence. *See Thomas v. Sullivan*, 801 F.Supp. 65, 73 (N.D. 1992) (*discussing* 20 C.F.R. § 404.1529(c)). Part of the ALJ's duty to fully develop the record can include ordering additional medical examinations when the existing medical data fails to address changes

11

in a plaintiff's alleged medical condition. *See Smith v. Apfel*, 231 F.3d 433, 437-438 (7th Cir. 2000). However, unlike the case in *Thomas*, the ALJ in this case did not rely solely on a lack of evidence in choosing not to give credibility to the plaintiff's assessment of the intensity and frequency of her seizures. In his opinion, the ALJ credited Ms. Racicik's treating physician's conclusions regarding the general treatment and control of Ms. Racicik's seizures. The ALJ noted that Ms. Racicik is taking medications to control her seizures, has been taking the same medication for years, and that, generally, the medication is effective in controlling her seizures (R. 21). Thus, the ALJ relied on the existing medical evidence regarding Ms. Racicik's seizures as well as the lack of any additional medical evidence to support Ms Racicik's claims in making a determination of credibility.

In his opinion, the ALJ noted the lack of any medical confirmation that the dosage of medication had become ineffective (R. 21-22). From this, Ms. Racicik contends the case at hand is analogous to *Smith*, and that the ALJ had a duty to request that additional blood testing be conducted to determine the effectiveness of the medication (Pl.'s Mem. at 12). In *Smith*, the appeals court held that additional medical x-rays were required because the existing x-ray images were a decade old and the plaintiff had asserted disability due to a degenerative disease; thus, updated images were necessary to determine if the plaintiff's condition had changed. 231 F.3d at 438. Where the condition of the plaintiff in question allegedly has changed since the time of the initial medical examination, *Smith* stands for the proposition that the ALJ has a duty to request updates to medical evidence. However, in the case at hand, there is no indication or argument that the intensity or frequency of the seizures have changed in at least the last ten years. Rather, Ms. Racicik admits that the frequency of seizures has not changed (R. 227). The ALJ additionally noted that Ms. Racicik saw her primary physician with regard to her seizures only on an infrequent, as needed basis (R. 21).

Thus, where Ms. Racicik did not offer updated medical information or contend that updated information was required to assess some new reality regarding her epilepsy, the ALJ was entitled in relying on the existing medical evidence in concluding that Ms. Racicik's seizures were not of the frequency alleged.

As Ms. Racicik correctly points out (Pl.'s Mem. at 10), the ALJ decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p. We conclude that the ALJ's decision meets that standard. Noting that the treating physician reported that Ms. Racicik's seizures generally were controlled, that Ms. Racicik has not had any changes in her medication or frequency of her seizures in the last 10 years, and that her last employer never knew that Ms. Racicik was epileptic, the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The objective medical evidence does not show that the alleged intensity of symptoms is present.

(R. 22). The opinion of the ALJ thus provides sufficient specificity as to what statements are being credited and why. Because "a reasonable mind might accept as adequate" the basis for the ALJ's opinion in this instance, there is "substantial evidence" to support the ALJ's conclusion that Ms. Racicik's testimony as to her symptoms should not be given credibility. *Herron*, 19 F.3d at 333 (quotations omitted).

**2.**

Ms. Racicik also contends that she meets the listed standard for chronic venous insufficiency, and that the ALJ improperly rejected her credibility in finding that she did not meet the regulatory standard. The regulatory standard requires evidence of:

> [c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following: (A) Extensive brawny edema . . . or (B) Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. § 404 App. 1 (4.11). Ms. Racicik has been diagnosed with varicose veins with probable stasis dermatitis (R. 147). However, the regulation additionally requires that an individual establish that she has recurrent or persistent ulcerations that have not healed following three months of prescribed treatment. 20 C.F.R. § 404 App. 1 (4.11). Ms. Racicik failed to show that in addition to varicose veins, she had recurrent or persistent leg ulcerations.

In February 2003, Ms. Racicik was treated for cellulitis and ulceration in her right leg, which improved within a week of treatment (R. 179). In March 2005, she was again diagnosed with varicose veins, but no ulcerations were found at that time (R. 142). In April 2005, Ms. Racicik complained about ulcerations on her legs, but refused to unwrap her legs so that a medical examination could take place; thus, no medical conclusions were made and no treatments were recommended (R. 147). In March 2006, she again went to her physician with leg complaints, but the doctor concluded that she did not have cellulitis or drainage (R. 179). Similarly, in April 2006, Ms. Racicik went to the doctor with leg complaints, but no ulcerations were found (R. 181). In May and July 2006, she was treated for drainage from her varicose veins, but the medical doctor did not

note whether there was ulceration in May 2006, and specifically noted in July that Ms. Racicik did not have any "actual ulceration[s]" (R. 182). In October 2006, Ms. Racicik testified that she had been suffering from leg ulcerations for the last two months (R. 224), but there is no medical evidence corroborating that claim.

Based on the totality of this record, there is substantial evidence to support the conclusion that Ms. Racicik does not suffer from persistent or recurring ulceration, and thus to support the ALJ's finding that Ms. Racicik did not meet or equal the listing for chronic venous insufficiency. Only in the February 2003 episode was there any medical confirmation that Ms. Racicik indeed did have ulcerations associated with her varicose veins. There is no indication that, when Ms. Racicik suffered from ulceration, treatment was ineffective at controlling the ulceration within three months. Rather, with treatment the ulceration improved quickly.

As a final point, it bears noting that, "[s]ince the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron*, 19 F.3d at 335; see also, *Diaz*, 55 F.3d at 308 ("an ALJ's credibility determination will not be disturbed unless it is patently wrong."); *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993) ("a reviewing court does not reconsider credibility determinations made by the ALJ so long as they find some support in the record."). In this case, there is evidence to support the ALJ's credibility findings. Because there is no evidence that the findings are patently wrong, we affirm the ALJ's determination as to Ms. Racicik's credibility regarding the frequency and intensity of her seizures and the recurrence of leg ulcerations.

**D.**

Ms. Racicik points out that "the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined" (Pl.'s Mem. at 10) (citing *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986)). Additionally, the regulations consistently indicate that all relevant evidence must be considered in making determinations of disability or functional capacity. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1527(c) ("After we review all of the evidence relevant to your claim . . . we make findings about what the evidence shows"); 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). Ms. Racicik argues that the ALJ violated this standard by failing to consider various pieces of evidence that Ms. Racicik says support a finding of disability. We address these arguments below.

**1.**

Ms. Racicik suggests that the ALJ failed to consider the disabling effect of her undisputed obesity (Pl.'s Mem. at 4). Obesity may, in combination with other impairments or even as a single impairment, be sufficient to justify a finding of disability. *See* Social Security Ruling 02-01p, Question 7. However, it is important to note that this same ruling states:

> we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

16

*Id.* Accordingly, the burden is on a plaintiff to establish that he or she is obese, and that this obesity, either alone or in combination with other impairments, renders the person disabled. Ms. Racicik has established that she is obese, even that she is extremely obese, having a body mass index over forty (R. 141, 145). However, establishing the mere fact of obesity is insufficient; Ms. Racicik also was required to show that her obesity is associated with some functional loss sufficient to create a disability. Ms. Racicik failed to do so. While an ALJ is obligated to state reasons for rejecting "entire lines of evidence," he is not required to evaluate every piece of evidence in the record. *Herron*, 19 F.3d at 333. Where a plaintiff has failed to provide any indication that her obesity, either alone or in combination with her other impairments, constitutes a disability, the ALJ is under no obligation to address the matter in his opinion.

2.

As mentioned above, before moving to Step 4 of the analysis, an ALJ must make a RFC finding as to the capability of the individual to sustain physical and mental work despite their impairments. 20 C.F.R. § 404.1520(a)(4)(iv). In making this determination, the ALJ is required to consider all medical impairments, even "medically determinable impairments that are not severe." 20 C.F.R. § 404.1545(a)(2) (internal quotations omitted). The ALJ in this case found that Ms. Racicik had a RFC "to lift and carry 10 pounds at a time and perform occasional walking and standing. She can sit for extended periods of time without difficulty" (R. 22). Ms. Racicik contends that, in making this finding, the ALJ did not specifically mention, and thus did not consider, all of Ms. Racicik's medical conditions, including hypertensive cardiovascular disease, dorsal myofascitis, varicose veins with probable stasis dermatitis, and methicillin resistant staphylococcous aureus (Pl.'s Mem. at 13).

However, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (R. 22). We find that this satisfied the ALJ's duty to evaluate entire lines of argument, which does not require him to discuss every piece of evidence. *Herron*, 19 F.3d at 333. A plaintiff has the burden of presenting the ALJ with medical evidence pertaining to their RFC. *See* 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity"). Had Ms. Racicik presented some evidence that the additional medical impairments in question actually affected her functional abilities, perhaps more analysis of that "line of argument" would have been required. However, Ms. Racicik does not suggest what, if any, additional restrictions these additional medical conditions place on her. Thus, the statement that all pertinent evidence was considered sufficiently indicates an appropriate level of consideration as to the additional medical conditions for the purposes of 20 C.F.R. § 404.1545 for the purposes of this case.

### 3.

Ms. Racicik also suggests that Ms. Racicik's pain should have been considered by the ALJ in making his RFC finding (Pl.'s Mem. at 11). In doing so, Ms. Racicik cites to *Luna v. Shalala*, where the Seventh Circuit held that when

> *the claimant indicates that pain is a significant factor* of his or her alleged inability to work, then . . . [f]actors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.

22 F.3d 687, 691 (7th Cir. 1994), (citing Social Security Ruling No. 88-13) (emphasis added). However, we find no evidence in Ms. Racicik's testimony that she found pain to be a significant factor in her alleged inability to work. To the contrary, she testified that the back pain she experienced in 2005 was no longer a problem (R. 223). We therefore reject this argument.

4.

Ms. Racicik argues that the ALJ erred by failing to consider the evidence that the side effect of one of her medications caused drowsiness that results in her falling asleep two to three times daily anywhere from 10 to 30 minutes (Pl.'s Mem. at 11). On this limited point, we agree. The side effect of Ms. Racicik's medications constitutes an entire line of evidence with regard to her functional abilities. Ms. Racicik testified that she lost her last job after falling asleep due to medications prescribed by her treating physician (R. 232-233). Moreover, the VE testified that if the side effects of the medication caused Ms. Racicik to doze off two or three times daily for 10 to 30 minutes each time, as Ms. Racicik claimed (R. 231), that would be enough to preclude Ms. Racicik from any employment (R. 243-244).

The ALJ's opinion does not discuss any of this evidence, and we thus are left in the dark as to whether the ALJ discredited Ms. Racicik's testimony on this point, and, if so, why. Accordingly, we remand the case for the ALJ to address this limited issue, including the taking of additional evidence if the ALJ deems it appropriate. We express no view as to the outcome of the further analysis by the ALJ on remand.[5]

---

[5] We have considered Ms. Racicik's other arguments, and find them to be without merit. The ALJ was not required to discuss the testimony of Ms. Racicik's mother concerning the frequency and symptoms of Ms. Racicik's seizures (Pl.'s Mem. at 13), as the testimony did not add to that offered by Ms. Racicik. Indeed, Ms. Racicik's mother described the length of the seizures to be shorter than Ms. Racicik claimed (*compare* R. 232 *and* R. 235) Nor was the ALJ required to discuss the VE's testimony (Pl's Mem. at 14), given the findings he made. Of course, if on remand the ALJ finds that Ms. Racicik randomly falls asleep during the day with the frequency and duration she described, the ALJ

## CONCLUSION

For the foregoing reasons, we deny defendant's motion for summary judgment (doc. # 15) and grant Ms. Racicik's motion for summary judgment (doc. # 13). We order a remand pursuant to sentence 4 of 42 U.S.C. § 405(g), for proceedings consistent with this Memorandum Opinion and Order.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: May 8, 2008

---

will need to address the VE's testimony as to the effect that would have on work that Ms. Racicik could perform.